ARMED SERVICES BOARD OF CONTRACT APPEALS

| | | |
|---|---|---|
| Appeal of -- | ) | |
| | ) | |
| Manhattan Hunt A Joint Venture | ) | ASBCA No. 61477 |
| | ) | |
| | ) | |
| Under Contract No. N40080-13-C-0151 | ) | |

APPEARANCES FOR THE APPELLANT:     Joseph A. McManus, Jr., Esq.
                                   Daniel K. Felsen Esq.
                                   David J. Butzer Esq.
                                     McManus & Felsen LLP
                                     Washington, DC

APPEARANCES FOR THE GOVERNMENT:    Craig D. Jensen, Esq.
                                     Navy Chief Trial Attorney
                                   Nicole R. Best, Esq.
                                   Trial Attorney

OPINION BY ADMINISTRATIVE JUDGE CLARKE ON THE GOVERNMENT'S
MOTION FOR PARTIAL SUMMARY JUDGMENT

The government (Navy), seeks partial summary judgment enforcing its interpretation of language relating to work on privatized wet utilities[1] owned by Terrapin Utility Services, Inc. (TUSI), on Joint Base Andrews, Maryland. We have jurisdiction pursuant to the Contract Disputes Act of 1978 (CDA), 41 U.S.C. §§ 7101-7109. We grant partial summary judgment and deny that portion of Manhattan Hunt A Joint Venture's (MHJV), appeal challenging the Navy's interpretation. MHJV's appeal relating to mistake and reformation is unaffected and remains before the Board.

STATEMENT OF FACT (SOF) FOR THE PURPOSE OF THE MOTION

*Solicitation No. N40080-12-R-0153 & Pre-Proposal Conference*

1. On May 18, 2012, the Department of the Navy issued Solicitation No. N40080-12-R-0153 (R4, tab 1). The project was described as construction of a 344,554 square foot Ambulatory Care Center (ACC) and a 23,612 square foot Dental Clinic at Joint Base Andrews, Maryland (*id.* at 4, 53[2]). The price schedule listed two contract line item numbers (CLIN) 0001a-q (ACC) and 0002a-e (Dental Clinic).

---

[1] "Wet" utilities refer to water and sewage.

[2] The page numbers refer to the PDF page numbers.

CLIN 0001a read, "All work in accordance with drawings and specifications, excluding work indicated in items 0001b thru 0001q." (R4 tab 1 at 53) CLIN 0002a read, "All work in accordance with the drawings and specifications, excluding work indicated in items 0002b thru 0002e" (R4, tab 1 at 56). Each CLIN had sub-CLINs and options (*id.* at 53-59). CLINs 0001b to 0001q provide unit pricing for concrete foundation demolition, lead abatement, asbestos abatement, PCB/Mercury abatement, shaft length, drilled concrete shaft test, steel casing, proof test hole, and removal of hydrocarbons (*id.* at 53-55). CLINs 0002b to 0002e provide unit pricing for shaft length, drilled concrete shaft test, steel casing, and proof test hole (*id.* at 56).

2. A pre-proposal conference was held on June 15, 2012 (R4, tab 5 at 69). The sign-in sheets indicate that Mr. Ben Pina and Mr. Jerry Eubank of MHJV attended (*id.* at 71, 74). Part of the slide presentation included "SPECIAL ISSUES: 10. Terrapin Existing Wet Utilities, Inspection and Tie In" (*id.* at 120).

*Solicitation Amendment No. 0004*

3. Solicitation Amendment No. 0004 was signed[3] and issued on June 21, 2012 (R4, tab 5). The description of one of the changes read:

> 3. Incorporate execution requirements associated with privatized wet utilities.
>
>> a. Terrapin Utility Services, Inc. (TUSI) has exclusive rights to work on all existing wet utilities. Any new facilities/systems expected to connect to existing wet utilities must be coordinated with TUSI. In no event shall the contractor cap, connect to or otherwise touch TUSI's infrastructure with [sic[4]] TUSI's express written permission. Please refer to Air Force Memorandum dated October 24, 2008, titled "MEMORANDUM FOR 316 CEP, 316 CEA, AND ALL CONSTRUCTION AGENTS" (Attachment 1) regarding requirements associated with the execution of new work.

(R4, tab 5 at 2) The referenced Memorandum read:

---

[3] The June 21, 2012, is in Block 16C DATE SIGNED but no actual signature is on the form. The same is true of all the 11 amendments in R4, tabs 2-12.

[4] This clearly should have been "without." MHJV objected to the addition of "with[out]" by the government in its brief. (App. opp'n at 3)

2

1. Andrews AFB's water distribution and wastewater collection system are owned and operated by Terrapin Utility Services, Inc (TUSI). Any new facilities/system components expected to connect to TUSI's systems, and any modifications of or connections to the existing systems identified in the specifications and drawings, must be coordinated with TUSI prior to the contract start date. The contract language provided as attachment is provide[d] for your immediate use on all future contracts to ensure appropriate coordination and relationships between TUSI and project designers and construction contractors.

....

Attachment – Wet Utility Contract Language

(R4, tab 5 at 10) The wet utility contract language attachment to the memorandum read:

Andrews AFB's water distribution and wastewater collection systems are owned and operated by Terrapin Utility Services, Inc (TUSI). Any new facilities/system components expected to connect to TUSI's systems and any modifications of or connections to the existing systems identified in the specifications and drawings, must be coordinated with TUSI prior to the contract start date. In no event shall Contractor cap, connect to, or otherwise touch TUSI's infrastructure without TUSI's express written permission.

The Contractor should obtain connecting facilities from TUSI via a connection charge in accordance with standard utility practice. However, if the Contractor constructs the connecting facilities, either themselves or via a sub-contractor, then the Contractor must utilize TUSI for inspection services and must arrange for TUSI to complete the "tie in" of the newly constructed facilities to TUSI's system. Inspection fee prices will be based off of the utility construction cost. The Contractor will be responsible for payment of any inspection and tie in fees and should include this in their price proposal.... TUSI must review and approve all wet utility designs before construction start. Design

3

review will be for a payment based off of the wet utility construction cost.

(R4, tab 5 at 11)

4. Solicitation Amendment No. 0004 added Sub-CLINs 0001r and 0002f to the price schedule:

| ITEM NO | DESCRIPTION | PRICE |
|---------|-------------|-------|
| 0001a | All work in accordance with drawings and specifications, excluding work indicated in items 0001b thru 0001r | |
| 0001r | All wet utility work to be performed by Terrapin Utility Services, Inc. (TUSI), which includes wet utilities to be removed and/or relocated, tie-ins, inspection of all wet utility construction and engineering design review of the construction documents | TBD |
| 0002a | All work in accordance with drawings and specifications, excluding work indicated in items 0002b thru 0002f | |
| 0002f | All wet utility work to be performed by Terrapin Utility Services, Inc. (TUSI), which includes wet utilities to be removed and/or relocated, tie-ins, inspection of all wet utility construction and engineering design review of the construction documents | TBD |

(R4, tab 5 at 58, 60-62) CLINs 0001b to 0001q and 0002b to 0002e remained the same as in the original solicitation (*id.* at 58-61).

5. Amendment No. 0004 also included drawings for the ACC and Dental Clinic. One set of drawings are identified as "demolition" drawings and have drawing numbers starting with "CD." (R4, tab 5 at 12-14, 18-43, 55-57) The demolition drawings include color coded lines indicating utilities "to remain," "to be abandoned," or "[to] remove" (*id.*). The demolition drawings each contain the note: "WATER AND SANITARY SEWER LINES AND STRUCTURES SHOWN TO BE REMOVED SHALL BE REMOVED BY TERRAPIN UTILITY SERVICES, INC. AT CONTRACTOR'S EXPENSE" (*id.*).

4

6. Another set of drawings are identified as "layout and utility plan" for the ACC and Dental Clinic, and have drawing numbers starting with "CS." Some of the layout drawings have the note: "CONNECTION TO EXISTING WATER LINES SHALL BE BY TERRAPIN UTILITY SERVICES INC. AT CONTRACTOR'S EXPENSE." One layout drawings has the note: "PROVIDE WATER AND SANITARY UTILITIES IN ACCORDANCE WITH TERRAPIN UTILITY SERVICES, INC. (TUSI) STANDARDS AND DETAILS. PROVIDE TUSI WITH CONNECTION AND INSPECTION FEES FOR THIS PROJECT." (R4, tab 5 at 16) Other layout drawings have no notes relevant to our decision (R4, tab 5 at 15-17, 44-52).

7. MHJV submitted its proposal on October 9, 2012 (R4, tab 13). All CLINs were priced except 0001r and 0002f that remained "TBD" (R4, tab 13 at 1, 6, 8).

*Contract No. N40080-13-C-0151*

8. Contract No. N40080-13-C-0151 (Contract 0151), was awarded to Manhattan Hunt on October 29, 2012, in the amount of $148,371,366.00 (R4, tab 14 at 1, 2, tab 14a). The price for CLINs 1r and 2f remained "TBD" (R4, tab 14 at 21, 23). Contract No. 0151 incorporated solicitation Amendment No. 0004 into the awarded contract (*id.* at 5).

9. Contract Specification Section 01 45 00.00 20 addresses Quality Control for the ACC and Dental Clinic (R4, tab 24 at 379, tab 26 at 243). Subsection 1.12 specifically details testing specifications. Subsection 1.12.5 is entitled "Site Water and Wastewater Utilities Overview." It states: "Terrapin Utilities Services, Inc. (TUSI)...shall provide overview of all testing, inspections, connection, demolition and engineering for all site water utilities Work. Payment for TUSI's services shall be paid by the Contractor." (R4, tab 24 at 390, tab 26 at 254)

10. Contract Specification Section 33 11 00 addresses "Water Distribution" for the ACC and Dental Clinic (R4, tab 25 at 1009, tab 27 at 307). Part 3 of the Specification relates to execution of the work, including installation of pipelines, field quality control, clean up and construction waste management. Subsection 3.1.1.4 of the installation of pipelines section is entitled "Connections to Existing Water Lines" and states:

> Contact Terrapin Utility Services, Inc. (TUSI) to make connections to existing water lines after approval is obtained and with a minimum interruption of service on the existing line. TUSI to make connections to existing lines under pressure in accordance with the recommended procedures of the manufacturer of the pipe being tapped.

(Supp. R4, tab 25 at 1014, tab 27 at 312)

5

11. By letter dated January 5, 2013, MHJV submitted Change Order Request No. 0001 proposing a price for the cost of the work to be associated with CLINs 0001r and 0002f (R4, tab 15). The proposal quoted $5,986,375.44 for construction of new wet utilities by MHJV with TUSI inspection and engineering (*id.* at 1, 2). Option A quoted $5,527,234.41 for TUSI to perform all of the wet utility work (*id.* at 1, 3).

12. The contracting officer (CO) responded to MHJV Change Order No. 0001 by letter dated January 11, 2013. The letter stated, in part:

> [Y]our proposal contains costs for new wet utility work and work on existing wet utilities.
>
> As discussed in the project progress meeting on January 8, 2013, amendment 0004 clearly outlines the work to be priced "TBD" for bid items 0001r and 0002f of the contract price schedule.
>
> . . .
>
> [T]hese bid items both listed a cost of "TBD" since the work required to be performed by TUSI was to be negotiated between the successful offeror and TUSI, and priced following contract award.
>
> All costs associated with new wet utility work are part of bid items 0001a and 0002a and should have been included in MHJVs final price revisions of October 8, 2012. Cost "TBD" under bid items 0001r and 0002f will be issued as a contract modification to cover costs associated with work on existing utilities which can only be performed by TUSI and as defined in amendment 0004.
>
> It is requested that MHJV's January 5, 2013 proposal be resubmitted reflecting only costs associated with work that must be performed by TUSI in accordance with amendment 0004.

(R4, tab 16)

13. By letter dated January 28, 2013, MHJV submitted a proposal for $6,106,953.00 to have TUSI perform all wet utility work with pipe removal by MHJV pursuant to CLINs 0001r and 0002f (R4, tab 28).

14. By letter dated February 25, 2013, the Navy sent MHJV Modification No. A00003 for signature (R4, tab 17). The transmittal letter read:

> Enclosed is modification A00003 for your review and signature. The enclosed modification includes all work that can only be performed by Terrapin Utility Services, Inc.
>
> The Navy's position remains that all costs associated with wet utility work not included in modification A00003 are part of bid items 0001a and 0002a and were included in MHJV's final price revisions of October 8, 2012.
>
> The Navy acknowledges that MHJV disagrees with the Navy's position. It is not the Navy's intent to prevent MHJV from pursuing relief under the Disputes clause (FAR 52.233-1) by agreeing to modification A00003.

(R4, tab 17)

15. The parties signed Modification No. A00003 on February 25 and 26 2013, with an effective date of February 22, 2013 (R4, tab 18 at 1). Modification No. A00003 provides[5]:

> a) The purpose of this modification is to award items 0001r and 0002f, for wet utility work to be performed by Terrapin Utility Services, Inc., which includes, temporary wet utility services, existing wet utilities to be removed and/or relocated, tie-ins, inspection of all wet utility construction and engineering design review of the construction documents. Items are priced as follows:
>
>> 1. P8000 Ambulatory Care Center, item 0001r in the amount of $1,374,000.00

---

[5] Modification No. A00003 also contains accord and satisfaction language, but in view of the transmittal letter's language it is not relevant.

7

2. P80001 Dental Clinic, item 0002f in the
amount of $371,000.00

    b) The contract amount has been increased by
$1,691,000.00[6] from $214,801,112.00 to
$216,492,112.00.

(R4, tab 18 at 2)

16. On January 28, 2013, MHJV sent the Navy its proposal for utility work performed by TUSI and pipe removal by MHJV. MHJV stated it intended to award "all wet utilities" work to TUSI. (R4, tab 15 at 1) On March 12, 2013, MHJV signed a contract with TUSI to provide engineering review and oversight, construction inspection of all wet utility construction, removal of existing wet utilities, new water and sewer connections, and temporary water and sewer connections to modular buildings in the amount of $916,985. Construction of the new water and sewer utilities was an optional item.[7] (R4, tab 29 at 2, 3, 30)

17. By letter dated October 11, 2013, MHJV submitted Change Order Request No. 0002 relating to "New Wet Utilities per CLIN #001r & 002f" proposing an additional cost of $2,094,229.00 (R4, tab 19). By letter dated January 9, 2014, the contracting officer advised MHJV that his office would take no further action on MHJV's proposal (R4, tab 20).

18. MHJV submitted a certified claim to the contracting officer, dated July 11, 2017.[8] The claim sought $1,802,083 for costs associated with new wet utility work performed by TUSI during the Project. MHJV's claim stated, in part:

> [O]ur request is based on the understanding that all wet utility work was to be performed by Terrapin Utility Services, Inc. ("TUSI") in accordance with the Bid Form and the supporting contract documents.
>
> . . .

---

[6] We cannot explain this number because the sum of $1,374,000.00 and $371,000.00 is $1,745,000 but these amounts are not relevant to our decision.

[7] MHJV stated in its brief that it did in fact subcontract with TUSI for all wet utility work (app. opp'n at 5 ¶ 10).

[8] The Navy requested that MHJV correct the claim certification. MHJV resubmitted the claim with a corrected certification on January 15, 2018 (R4 tab 23 at 1).

> [I]n this REA, MHJV seeks payment for the costs of all wet utilities as the cost of that work was expressly excluded from its bid price.
>
> ....
>
> **IV. The Government should reform the contract pursuant to FAR § 14-407-4(b).**
>
> ....
>
> To exercise this option, the agency must process the request under the procedures of Subpart 33.2 relating to the Contract Disputes Act, and following criteria. First, under Section 14.407(c) [sic[9]], the agency determination "may be made only on the basis of clear and convincing evidence that a mistake in bid was made.["] This mistake may be mutual, but if it was unilateral, it must have been "so apparent as to have charged the contracting officer with notice of the probability of the mistake," FAR § 14.407[-4](c)(2).
>
> In this case, the Government was aware of the error two days before contract award, in which the Contracting Officer asked whether the bid included Wet Utilities that MHJV was allowed to perform, and the response was that "All" Wet Utilities were excluded as "TBD" in the bid documents. The contract was awarded following the conversation, without further inquiry, on October 29, 2012.

(R4, tab 21 at 1-2, 8-9)

19. On October 23, 2017, the Navy issued a CO's Final Decision denying MHJV's claim. The final decision denied MHJV's claim "in its entirety," but did not directly address MHJV's mistake/reformation argument. (R4, tab 22) On January 9, 2018, MHJV filed a notice of appeal with the ASBCA. On January 10, 2018, the ASBCA docketed the appeal as ASBCA No. 61477.

---

[9] This should be FAR 14.407-4(c).

## DECISION

*Legal Standard for Summary Judgment*

We evaluate a motion for summary judgment under the well-settled standard: Summary judgment is properly granted only where there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. "The moving party bears the burden of establishing the absence of any genuine issue of material fact and all significant doubt over factual issues must be resolved in favor of the party opposing summary judgment." *Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1390 (Fed. Cir. 1987) (citations omitted). In the course of the Board's evaluation of a motion for summary judgment, our role is not "'to weigh the evidence and determine the truth of the matter' but rather to ascertain whether material facts are disputed and whether there exists any genuine issue for trial." *Holmes & Narver Constructors, Inc.*, ASBCA Nos. 52429, 52551, 02-1 BCA ¶ 31,849 at 157,393 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). A material fact is one which may make a difference in the outcome of the case. *Liberty Lobby*, 477 U.S. at 248. The opposing party must assert facts sufficient to show a dispute as to a material fact of an element of the argument. *New Iraq Ahd Co.*, ASBCA No. 59304, 15-1 BCA ¶ 35,849 at 175,291-92 (citing *Mingus*, 812 F.2d at 1390-91) ("To ward off summary judgment, the non-moving party must do more than make mere allegations; it must assert facts sufficient to show a dispute of material fact."); *see Lee's Ford Dock. Inc.*, ASBCA No. 59041, 16-1 BCA ¶ 36,298 at 177,010. If the motion for summary judgment involves contract interpretation, we cannot grant summary judgment if the language is ambiguous and requires the weighing of extrinsic evidence. *Classic Site Solutions, Inc.*, ASBCA No. 58375, 14-1 BCA ¶ 35,664 at 174,578 ("A motion for summary judgment based on contract interpretation may only be granted if there is no ambiguity requiring reliance on extrinsic evidence.").

*No Disputed Material Facts*

Each party commented on the other's statement of undisputed material facts (SUMF). In its brief MHJV comments on the Navy's SUMF paragraphs 2, 9, 14, 16, 19, 20-21, and 31. (App. opp'n at 3-4) We hold that the paragraphs not listed are undisputed. Of the listed paragraphs, MHJV does not dispute 2, and 9. The remaining listed paragraphs "dispute" the accuracy of quotes (14, 16) and the Navy's "interpretation." (*Id.* at 3-4) Therefore, MHJV does not dispute material facts in the Navy's SUMF. The Navy responded to each of MHJV's comments and concludes no disputed material facts that would prevent a decision on its motion exist. (Gov't reply br., ex. 2) We agree; none of MHJV's comments constitute disputed material facts that would preclude a decision.

10

Attached to the Navy's reply brief is a table listing the Navy's response to MHJV's "Additional Material Facts" paragraphs 1 to 17 (app. opp'n at 4-6). The Navy agrees with paragraphs 1-7, 9-11, 14-17. We agree with the Navy that its concerns about paragraphs 8, 12-13 do not constitute disputed material facts.

*Positions of the Parties*

The Navy contends that "CLINs 0001r and 0002f and the other wet utility provisions in the contract" clearly and unambiguously identify "specific categories of wet utility work to be performed by Terrapin" on existing wet utilities owned and operated by Terrapin. The Navy contends that these CLINs cannot be interpreted to require Terrapin to construct the new wet utilities. (Gov't mot. at 2, 13-14)

In its opposition brief, MHJV presents three issues. The first involves the language of CLINs 0001r and 0002f. These two CLINS both read:

> All wet utility work to be performed by Terrapin Utility
> Services, Inc. (TUSI), which includes wet utilities to be
> removed and/or relocated, tie-ins, inspection of all wet
> utility construction and engineering design review of the
> construction documents

(SOF 4) MHJV focuses on the word "includes" and argues that its use means that the work listed is not exclusive. According to MHJV this supports its interpretation that all wet utility work is included in CLINs 0001r and 0002f.[10] (App. opp'n at 1, 10-12) Next, MHJV argues that the language of CLINs 0001r and 0002f is ambiguous requiring the consideration of extrinsic evidence of the drafter's intent behind the language (*id.* at 1, 15-16). In the same vein, MHJV argues that its interpretation is reasonable creating two reasonable interpretations and therefore a legal ambiguity (*id.* at 2, 23-25). MHJV adds various other arguments including the Navy's interpretation and interrogatory responses create disputed facts (*id.* at 17-19), the Navy reads "relocation" out and "required" into the CLINs (*id.* at 20-21), and mistake/reformation (*id.* at 25-26) among others.

In its response to MHJV's brief, the Navy first reiterates its position that the language of Amendment No. 0004, read in conjunction with other language in the contract and drawings, is clear and unambiguous and that MHJV is "not excused" from reading the contract as a whole (gov't reply br. at 4-8). Next the Navy states that

---

[10] We know that MHJV attended the pre-proposal conference on June 15, 2012 where one slide identified "Terrapin Existing Wet Utilities, Inspection and Tie-In" as a "SPECIAL ISSUE," (SOF 2) but there are no minutes or testimony in the record establishing what, if anything, was discussed.

11

its interpretation does not rely on extrinsic evidence to support the Navy's intent argument (*id.* at 8-13). Next the Navy addresses MHJV's focus on the word "includes" in CLIN's 0001r and 0002f and distinguishes the case law cited by MHJV (*id.* at 15-19). It also discusses the role of the price schedule in interpreting the CLINs (*id.* at 20-21). Next the Navy contends that MHJV's interpretation is not reasonable because it fails to read the CLIN's in context of the entire contract (*id.* at 21-24). The Navy devotes an additional eight pages addressing various other arguments in MHJV's brief (*id.* at 25-32). Finally the Navy argues that MHJV's mistake in bid theory "has no bearing upon the determination of whether Appellant is entitled to an equitable adjustment pursuant to the terms of the contract" (*id.* at 33).

*The Navy's Interpretation is Reasonable*

The rules of contract interpretation are well known. When interpreting a contract, "(the language of [the] contract must be given that meaning that would be derived from the contract by a reasonably intelligent person acquainted with the contemporaneous circumstances)." *Teg-Paradigm Environmental, Inc. v. U.S.*, 465 F.3d 1329, 1338 (Fed. Cir. 2006) (quoting *Metric Contructors, Inc. v. Nat'l Aeronautics & Space Admin*, 169 F.3d 747, 752 (Fed. Cir. 1999)). When interpreting the contract, the document must be considered as a whole and interpreted so as to harmonize and give reasonable meaning to all of its parts. *NVT Technologies v. United States,* 370 F.3d 1153, 1159 (Fed. Cir. 2004) (citing *McAbee Construction, Inc. v. United States*, 97 F.3d 1431, 1434-35 (Fed. Cir. 1996)). In determining reasonableness it is only necessary that the interpretation be in the "zone of reasonableness." *States Roofing Corp. v. Winter*, 587 F.3d 1364 at 1369 (Fed. Cir. 2009). We apply this standard herein.

We start with CLINs 0001a and 0002a that require MHJV to perform "All Work" to build the ACC and Dental Clinic "in accordance with drawings and specifications, excluding work indicated in items 0001b thru 0001r" and 0002b thru 0002f (SOF 4). The language of CLINs 0001r and 0002f clearly requires TUSI to perform removal and/or relocation of existing wet utilities, tie-ins, engineering design review of the construction documents and inspection of all new wet utility construction (SOF 4). The only thing CLINs 0001r and 0002f require concerning new wet utilities are tie-in, inspection and design review, not all construction.[11] The change description in Amendment No. 0004 makes it clear that TUSI "has exclusive rights to work on all existing wet utilities" and admonishes that contractors may not "touch" TUSI's infrastructure without TUSI's express written permission. (SOF 3) The Memorandum cited in the change description makes it clear that TUSI owns and operates the wet utility infrastructure on Andrews AFB and coordination with TUSI is required if new

---

[11] There is nothing in these CLINs that precludes MHJV from contracting with TUSI to construct the new wet utility systems which is what happened (SOF 16).

12

wet utilities are to be connected to its systems or require modification of TUSI's systems. The memorandum included an attachment providing contract language to be used "on all future contracts to ensure appropriate coordination and relationships between TUSI and project designers and construction contractors." The contract language in the attachment reiterates that TUSI owns and operates the wet utility systems and that any work affecting the existing wet utility system must be coordinated with TUSI and TUSI services must be paid for by the contractor. (SOF 3) Drawings included with Amendment No. 0004 included notes consistent with the admonitions in the amendment and memorandum. Demolition drawings included a note requiring that TUSI shall remove any existing sewer lines and structures requiring removal. (SOF 5) Utility plan drawings required that TUSI perform connections to the existing wet utility systems and that MHJV's wet utilities shall be in accordance with TUSI's "standards and details" (SOF 6). The contract's Quality Control specification requires that TUSI "shall provide overview of all testing, inspections, connection, demolition and engineering for all site water utilities Work" (SOF 9). The contract's Water Distribution specification requires that MHJV contact TUSI to make connections to existing wet utility lines (SOF 10).

The record is replete with evidence warning contractors about TUSI's ownership of the existing wet utilities and requiring TUSI involvement in anything affecting the existing wet utilities. None of this evidence suggests that TUSI was obligated to construct the new wet utilities. Reading all of this evidence together leads to only one conclusion, the Navy's interpretation of CLINs 0001r and 0002f is well within the zone of reasonableness.

*MHJV's Interpretation of "includes" is Reasonable*

CLINs 0001r and 0002f read:

> All wet utility work to be performed by Terrapin Utility Services, Inc. (TUSI), which *includes* wet utilities to be removed and/or relocated, tie-ins, inspection of all wet utility construction and engineering design review of the construction documents.

(SOF 4) (emphasis added) MHJV, citing cases interpreting "includes" and a dictionary definition, argues that the use of "includes" in CLINs 0001r and 0002f means that the list in the CLINs is not exclusive (app. opp'n at 10-12). We agree. It seems reasonable to us that there might be something else that MHJV might do that affects the existing wet utility system, other than the list in CLINs 0001r and 0002f, that would require TUSI's involvement. However, our analysis of MHJV's reasonableness does not end here.

13

*Intent and the need for Extrinsic Evidence*

The Navy gratuitously argued that the "intent behind requiring Terrapin to perform specific tasks was to protect Terrapin's interest as the owner of the existing wet utility infrastructure" (gov't mot. at 12). This gave MHJV an opening to argue this intent requires consideration of extrinsic evidence (app. opp'n at 1, 6, 15-16). As we stated above, MHJV is correct that we could not grant summary judgment if we needed to consider disputed extrinsic evidence to resolve an ambiguity. *Classic Site Solutions, Inc.*, 14-1 BCA ¶ 35,664 at 174,578. The problem we see with MHJV's argument is that the contract's language, as discussed below, is unambiguous and the Navy's arguments, thus, sheds no light on the interpretation of CLINs 0001r and 0002f.

*MHLV's Interpretation is not within the Zone of Reasonableness*

We have found that the parties do not dispute each other's material facts. We have found that the Navy's interpretation is reasonable. In order for MHJV to avoid summary judgment it must convince us that its interpretation is also reasonable thereby creating a legal ambiguity. *Teg-Paradigm*, 465 F.3d at 1338 ("When a provision in a contract is susceptible to more than one reasonable interpretation, it is ambiguous").

MHJV argues "MHJV reasonably interpreted the Wet Utility CLINs to require[12] Terrapin to perform [all] the wet utility work" (app. opp'n at 10). MHJV fails to support its interpretation with any language in the contract. CLIN 0001a (ACC) requires MHJV to perform "All work in accordance with drawings and specifications, excluding work indicated in items 0001b thru 0001r" (SOF 4). CLIN 0002a (Dental Clinic) requires MHJV to perform "[a]ll work in accordance with drawings and specifications, excluding work indicated in items 0002b thru 0002f" (SOF 4). CLINs 0001a and 0002a require MHJV to perform "all work" to construct the ACC and dental clinic. "All work" is not ambiguous and means precisely what it says. "All work" includes all new wet utility construction work, there is no other reasonable interpretation. MHJV's interpretation that CLINs 0001r and 0002f require TUSI to perform "all work" constructing new wet utilities cannot be harmonized with CLINs 0001a and 0002a.

TUSI's work is limited to "removal, relocation and tie-in" work on the existing wet utilities and "inspection of all wet utility construction and engineering design review of the construction documents" relating to the new wet utilities (SOF 4). Inspection and engineering design review cannot reasonably be interpreted to include the actual construction of the new wet utilities. Indeed, the limited list of TUSI's

---

[12] There is nothing in the contract that precluded MHJV from contracting with TUSI to perform all wet utility work, which it did (SOF 16).

14

responsibilities in CLINs 0001r and 0002f makes no sense if MHJV's interpretation were correct because TUSI would be responsible for "all work" on the wet utilities both old and new. We agreed with MHJV that this list was not "exclusive" but MHJV has presented absolutely no evidence supporting its interpretation other than its argument standing alone. The Navy's interpretation of CLINs 0001r and 0002f is in harmony with all of the other provisions in the contract dealing with TUSI's work, MHJV's interpretation is not.

MHJV must do more than make mere allegations that its interpretation is reasonable. It must assert facts sufficient to show its interpretation is reasonable in order to establish a second reasonable interpretation and therefore an ambiguity requiring the consideration of extrinsic evidence. *Blake Construction Co. Inc.*, ASBCA No. 15432, 71-2 BCA ¶ 9173 at 42,551 ("Thus, in both cases, facts, not present in this appeal, were presented to support the contractor's interpretation which the Board found to be reasonable.").

Because MHJV's interpretation cannot be read harmoniously with other provisions in the contract and is completely unsupported by any language in the contract or other facts in the record, MHJV's proffered interpretation is not within the zone of reasonableness. Therefore, the Navy's interpretation is the only reasonable interpretation and there is no ambiguity.

*Mistake in Bid/Reformation*

In its claim MHJV argued that the Navy should reform the contract pursuant to FAR 14-407-4(b) and (c) (SOF 18). The final decision denied MHJV's claim "in its entirety," but did not directly address the mistake/reformation argument (SOF 19). In its motion for partial summary judgment the Navy does not address MHJV's contention that it made a mistake and is entitled to reformation. In its opposition to the Navy's motion, MHJV concludes arguing that the Navy is not entitled to summary judgment because it is entitled to reformation. MHJV argues, "[t]he government has not moved for summary judgment on MHJV's argument that, if it was mistaken, it is entitled to relief under FAR § 14.407." (App. opp'n at 26) In its reply brief the Navy argues, "Appellant's mistake in bid theory has no bearing upon the determination of whether Appellant is entitled to an equitable adjustment pursuant to the terms of the contract. Accordingly, Appellant's mistake in bid theory does not bar the Board from granting the Government's motion for partial summary judgment" (gov't reply br. at 33). Both parties have a point. The Navy did not include the mistake/reformation claim in its motion. The mistake/reformation claim is separate and distinct from the interpretation claim which is the subject of the motion. The mistake/reformation claim survives our granting partial summary judgment in favor of the Navy on the interpretation claim.

15

## CONCLUSION

For the reasons stated above, we grant partial summary judgment in favor of the Navy and deny MHJV's appeal limited to the interpretation issue. The mistake/reformation matter remains before the Board.

Dated: June 21, 2019

CRAIG S. CLARKE
Administrative Judge
Armed Services Board
of Contract Appeals

I concur

J. REID PROUTY
Administrative Judge
Acting Chairman
Armed Services Board
of Contract Appeals

I concur

OWEN C. WILSON
Administrative Judge
Vice Chairman
Armed Services Board
of Contract Appeals

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA No. 61477, Appeal of Manhattan Hunt A Joint Venture, rendered in conformance with the Board's Charter.

Dated:

PAULLA K. GATES-LEWIS
Recorder, Armed Services
Board of Contract Appeals

16